Sealed
Public and unofficial staff access to this instrument are prohibited by court order

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
*August 01, 2022*

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| United States of America<br>v.<br><br>Rene Fernandez Gaviola<br><br>*Defendant(s)* | Case No. **4:22-mj-1795** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __between April 2019 and April 2022__ in the county of ____Harris____ in the
____Southern____ District of ____Texas____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to Commit Health Care Fraud |
| 18 U.S.C. § 1347 | Health Care Fraud |
| 18 U.S.C. § 371 | Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks |
| 42 U.S.C. § 1320a-7b. | Anti-Kickback Statute |

This criminal complaint is based on these facts:
See attached Affidavit of Special Agent William Paul Dunn, United States Department of Health and Human Services, Office of Inspector General.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent William Dunn, US HHS-OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 01, 2022

_____
*Judge's signature*

City and state: Houston, Texas

U.S. Magistrate Judge Yvonne Y. Ho
*Printed name and title*

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order

# AFFIDAVIT

I, William Paul Dunn, your affiant, being duly sworn, do depose and state as follows:

### A. Identity and Experience of Affiant

1. Affiant, is a Special Agent ("SA") with the United States Department of Health and Human Services, Office of Inspector General ("HHS-OIG"), assigned to the U.S. Department of Justice Health Care Fraud Strike Force, and has been so employed for approximately 2 years.

### B. Purpose of the Affidavit

2. This affidavit is made in support of a complaint and arrest warrant for RENE FERNANDEZ GAVIOLA ("R GAVIOLA").

3. This affidavit does not contain all information gathered during this investigation but is being submitted for the limited purpose to establish probable cause to believe that R GAVIOLA has engaged in criminal activity.

4. Based on my investigation and the information contained in this affidavit, it is affiant's belief that R GAVIOLA engaged in violations of federal law, including Conspiracy to Commit Health Care Fraud, 18 U.SC. § 1349, Health Care Fraud, 18 U.S.C. § 1347, Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks, 18 U.S.C. § 371, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b.

### C. Summary of the Investigation

5. Leon Xavier Foreman Dental, PLLC DBA Floss Family Dental Care, Tax ID 834050809, ("FLOSS")  is a dental clinic owned on paper by Dentist 1 but operated by R GAVIOLA. The investigation uncovered that R GAVIOLA paid patient recruiters kickbacks for Medicaid client referrals. The patient recruiters in turn paid kickbacks to the parents of Medicaid clients to bring their children to FLOSS for dental services. The children were seen at FLOSS by various individuals (infrequently Dentist 1) for usually only an exam and a cleaning. R GAVIOLA

1

then submitted, or caused to be submitted, claims to Medicaid for dental services that were not actually provided, including hundreds of cavity fillings, and/or not provided as billed. R GAVIOLA also employed an unlicensed dentist to treat Medicaid clients and billed the services as if they were provided by Dentist 1.

### D. Basis for Facts Contained in This Affidavit

6. The statements in this affidavit are based upon my investigation, information provided to me by Special Agents of the HHS-OIG, Federal Bureau of Investigation (FBI), and Investigators of the Texas Office of Attorney General Medicaid Fraud Control Unit (TXMFCU), public source and business records, and my experience and background as a Special Agent.

### E. The Medicaid Program

7. The Medicaid Program ("Medicaid") is a state-administered health insurance program funded by the United States Government and by the State of Texas. Medicaid helps pay for reasonable and necessary medical procedures and services provided by qualified healthcare professionals to individuals who were deemed eligible under state low-income programs. Medicaid was implemented in 1967 under the provisions of Title 19 of the Social Security Act of 1965. Individuals receiving benefits under Medicaid are referred to as Medicaid "clients". The Texas Health and Human Services Commission ("HHSC") administers Medicaid in Texas. Medicaid is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

8. The State of Texas contracts with Managed Care Organizations ("MCOs") to administer health insurance plans to Medicaid clients.

9. In order participate in the Medicaid program, a provider must submit an application to the Texas Medicaid and Healthcare Partnership ("TMHP"). If the provider meets certain qualifications, TMHP will approve the application, enter into a written contract with the provider, and issue a unique provider identification number to the provider. TMHP-enrolled providers could contract with MCOs to provide medical services to Medicaid clients. The provider was then allowed to submit bills for services, known as "claims," to Medicaid or

MCOs for reimbursement for the cost of providing medically necessary services to Medicaid clients.

10. Medicaid covers comprehensive dental services for eligible Medicaid clients. Medicaid dental services are provided statewide through Medicaid managed care Dental Maintenance Organizations ("DMOs"). Each Medicaid managed care DMO contracts with general dentists, pediatric dentists, and dental specialists.

11. DentaQuest and Managed Care of North America Dental ("MCNA") are DMOs in the State of Texas.

12. A Medicaid claim was required to set forth, among other things, the client's name and Medicaid identification number, the services performed for the client, the date the services were provided, the cost of the services, and the name and identification number of the provider who rendered the services. Upon submitting a claim to Medicaid, a provider certified, among other things, that:

    a. The information submitted regarding claims or encounter data was true, accurate, and complete; and

    b. The claim or encounter data submitted was prepared in compliance with the laws and regulations governing Medicaid.

**F. Floss Family Dental Care**

13. FLOSS is a dental clinic located at 3300 S Gessner Rd, Suites 112, 125, 165 (comprising two offices), Houston, TX 77063 ("Gessner Location").

14. On November 3, 2020, agents observed FLOSS operating out of 6121 Hillcroft Ave., Suite W, Houston, TX 77081 ("Hillcroft Location").

15. In December 2020, agents learned through witnesses and confirmed with the landlord that FLOSS operated out of 6929 Jensen, Houston, TX 77093 ("Jensen Location"), but left the premises in approximately September 2020.

16. R GAVIOLA managed and controlled the operations of Floss.

17. LORD ALAIN REVOTE GAVIOLA ("A GAVIOLA"), is R GAVIOLA's son and was an employee of FLOSS. A GAVIOLA is not a licensed dentist in the State of Texas, but held himself out to the public as a licensed dentist at the FLOSS Hillcroft Location.

18. IFEANYI NDUBISI OZOH ("OZOH") was an employee and manager of FLOSS

19. CHRISTIAN AGNO AQUINO ("AQUINO") was an employee and manager of FLOSS.

20. Dentist 1 is on the paper owner of FLOSS and a licensed dentist in the State of Texas.

21. In April 2018, FLOSS enrolled with TMHP with a listed address of Gessner Location, Suite 165, as the only physical and mailing address.

22. In April 2019, FLOSS enrolled with Dentaquest to provide dental services to Dentaquest Medicaid clients. Gessner Location is the primary and only location listed. The contact person listed is R GAVIOLA or Dentist 1. R GAVIOLA is listed as the office manager. Dentist 1 is the only enrolled dentist.

23. In May 2019, FLOSS enrolled with MCNA to provide dental services to MCNA Medicaid clients. Gessner Location is the only location listed. GAVIOLA is the contact person and office manager. Dentist 1 is the only enrolled dentist.

24. In 2019 and 2020, Dentaquest and MCNA received numerous complaints from Medicaid clients that FLOSS was billing for dental services that were not provided.

25. In July 2020, MCNA performed a claims analysis and found that FLOSS was a billing outlier for restorative services (such as cavity fillings) overall and on a per patient basis. MCNA instituted a corrective action plan and required FLOSS to undergo training. At the training, MCNA representatives discussed the corrective action plan with FLOSS staff, including R GAVIOLA.

26. From June 13, 2019 to in or around January 2021, R GAVIOLA and his coconspirators submitted or caused the submission of approximately $6.8 million in claims to Medicaid and DMOs for medical services purportedly performed by Dentist 1.  Medicaid and DMOs paid approximately $4.9 million on those claims.

G. **Probable Cause to believe the crimes of Conspiracy to Commit Health Care Fraud , Conspiracy to Pay Illegal Kickbacks, and Health Care Fraud have been committed:**

### *Dentist 1*

2 . nvestigators interviewed Dentist 1. Dentist 1 stated that he has been a dentist since 2003. In Spring 2019, R GAVIOLA reached out to Dentist 1 about opening a dental clinic.

2 . On May 8, 2019, Dentist 1 was involved in a serious car accident and was in the hospital for 2 weeks. After he was released from the hospital, Dentist 1 was wheelchair bound for several months. During this time, R GAVIOLA brought Dentist 1 paperwork to sign at his house.

29. After the car accident, Dentist 1 worked at another dental clinic, Affordable Dental, on a part time basis.

0. Starting in approximately November 2019 through early 2020, Dentist 1 worked FLOSS on an infrequent basis. Dentist 1 said he started working at FLOSS on a regular basis in approximately June 2020. Dentist 1 noted that he worked 2-4 hours a day, a few days a week. Dentist 1 said he performed oral exams and identified fillings for patients. Dentist 1 told investigators that he would recommend treatment for patients but almost never perform the treatment. Dentist 1 said he performed only a few small fillings, less than 20 total, during his entire employment with FLOSS. Dentist 1 said he worked at the Jensen Location and then the Gessner Location. Dentist 1 estimated he went to the Hillcroft location on only two occasions. On one occasion, Dentist 1 was treated by A GAVIOLA. On the other occasion, Dentist 1 only oversaw teeth cleanings and did not provide any treatment.

1. During his employment at FLOSS, Dentist 1 suffered from severe back pain, muscle spasms, and needed frequent rest breaks due to the injuries from the car accident. FLOSS employees set up an air mattress at the Jensen location so Dentist 1 could take breaks. Dentist 1 said he also lost mobility in his hands, which did not improve until November 2020.

2. Dentist 1 was not familiar with how FLOSS billed Medicaid or FLOSS's financial status. Dentist 1 said R-GAVIOLA had complete control over FLOSS.

. Dentist 1 told investigators that A-GAVIOLA worked at FLOSS as a dentist. Dentist 1 said A-GAVIOLA presented himself as a licensed dentist and was called "Dr. Alain" by FLOSS employees and patients.

### *Patient Recruiter 1*

- Agents interviewed Medicaid client parent and FLOSS patient recruiter, Patient Recruiter 1. In 2019 and 2020, Patient Recruiter 1 admitted that she was paid approximately $100 per child referred to FLOSS for dental services by R GAVIOLA. Patient Recruiter 1 referred several patients to FLOSS, including her six minor children, S.P., D.P., J.P., C.H., A'm.L. and Am.L., several extended family members, friends, and other individuals she met while driving around Houston. Patient Recruiter 1 described the Gessner, Hillcroft, and Jensen Locations as FLOSS locations where she brought patients.

- Patient Recruiter 1 stated that in one week alone she sent approximately 50 patients to FLOSS. Patient Recruiter 1 told investigators that R GAVIOLA paid her to bring Medicaid clients to FLOSS via cash, check and the Cash App[1]. Patient Recruiter 1 has been paid several thousand dollars by R GAVIOLA and other FLOSS employees for patient referrals in the last few years.

- Patient Recruiter 1 identified a photograph of OZOH and told agents that OZOH had paid her when R GAVIOLA was not available. OZOH helped manage the Jensen Location and worked at Gessner Location maintaining patient files. Patient Recruiter 1 recalled that OZOH was concerned about the cameras at Gessner Location, so would pay the FLOSS patient recruiters, including Patient Recruiter 1, by putting cash on top of the soda machines in the breakroom.

- Patient Recruiter 1 recalled that AQUINO was the manager of the Hillcroft Location and also paid patient recruiters, including Patient Recruiter 1. Patient Recruiter 1 said that AQUINO's duties also included performing teeth cleanings and taking x-rays of patient's teeth.

- Patient Recruiter 1 said the Medicaid clients at FLOSS only received a teeth cleaning and sometimes an x-ray was taken. Patient Recruiter 1 told agents that Dentist 1 was rarely at any of the three locations. Patient Recruiter 1 said one point in Summer 2020, Dentist 1 completely stopped coming to the Jensen Location. Patient Recruiter 1 told agents that when Dentist 1 was present, she did not see him perform dental procedures other than a cleaning and exam, including on her own children. Patient Recruiter 1 believed A GAVIOLA was the dentist at the Hillcroft Location.

9. Investigators reviewed Medicaid claims data for Patient Recruiter 1's children. From July 2019 through September 2020, FLOSS billed Dentaquest and MCNA approximately $20,068 for

---

[1] The Cash App is a mobile payment service that allows users to pay and receive money.

providing dental services, including approximately 165 cavity filling procedure codes, to Patient Recruiter 1's children, S.P., D.P., J.P., C.H., A'm.L. and Am.L. FLOSS was paid approximately $13,887.40 on these claims. All claims were billed with Dentist 1 as the rendering provider. For S.P. alone, from November 2019 to September 2020, FLOSS billed Dentaquest for 33 cavity filling procedure codes purportedly provided by Dentist 1.

### Patient Recruiter 2

0. Agents interviewed Patient Recruiter 2. Patient Recruiter 2 was initially paid by another FLOSS patient recruiter to bring her 4 children, JAY.E., JAI.E., JAZ.E., and JO.E. to the Jensen Location for dental services. After this visit, Patient Recruiter 2 began referring patients to R GAVIOLA and FLOSS for $50 to $60 per kid. Later, Patient Recruiter 2 was paid $100 per kid. Patient Recruiter 2 said she would find patients through friends and usually paid them $30 dollars per kid.
1. Patient Recruiter 2 said that JAY.E. and JAI.E. have no fillings and JAZ.E. and JO.E. each have four fillings. Patient Recruiter 2 said her children went to the Jensen Location two times and went to the Gessner Location two or three times. Patient Recruiter 2 said that there were two or three times when she brought her children to FLOSS and there was no dentist at all.
2. Patient Recruiter 2 has brought other children to the Hillcroft Location. Patient Recruiter 2 said there were times when a lot of patients would show up at the Gessner Location and she would be sent to Hillcroft location. Patient Recruiter 2 identified A GAVIOLA as the dentist at the Hillcroft Location. A GAVIOLA wore scrubs, a white coat, and provided dental treatment to children.
. Patient Recruiter 2 identified Dentist 1 as the dentist at the Jensen Location. Patient Recruiter 2 said Dentist 1 never gave her children any fillings.
. Patient Recruiter 2 named 5 other patient recruiters that were paid for patients by R GAVIOLA and FLOSS. Patient Recruiter 2 said she was paid by R GAVIOLA, OZOH, AQUINO, and A GAVIOLA. OZOH paid all marketers in the hallway at the Gessner Location near the vending machines. Patient Recruiter 2 said on one occasion, OZOH told her to pick up her cash on top of the vending machine.
. Investigators reviewed Medicaid claims data for Patient Recruiter 2's children. From August 2019 through November 2020, FLOSS billed Dentaquest and MCNA approximately

$16,545.71 for providing dental services, including approximately 102 cavity filling procedure codes, to Patient Recruiter 1's children, AY.E., JAI.E., JAZ.E., and JO.E.. FLOSS was paid approximately $10,503.82 on these claims. All claims were billed with Dentist 1 as the rendering provider. For JAY.E. alone, from November 2019 to November 2020, FLOSS billed Dentaquest for 30 cavity filling procedure codes purportedly provided by Dentist 1.

### *Parents G.S. and A.S.*

46. On December 29, 2020, investigators interviewed Medicaid client parent G.S. and her husband, A.S. G.S. has seven minor children, A.M.S., D.J., O.S., Ab.S., G.S., Alp.S. and Ali.S, who are insured for dental benefits with Medicaid.

47. G.S. identified Patient Recruiter 2 as a friend that paid her $25 per child to visit FLOSS for dental services.

48. G.S. is familiar with the Jensen location and Gessner Location. G.S. described her children's attending dentist as an Asian male in his mid-40s. (NOTE: Dentist 1 is a 45-year-old African American male.) During the FLOSS visits, G.S. said that M.S. had a tooth pulled and her other children had their teeth cleaned. G.S. said that her children did not receive multiple fillings at FLOSS.

49. A.S. accompanied G.S. and the children to the Gessner Location and the Jensen Location. A.S. said he recalled two individuals performing dental work on his children's teeth on separate occasions at FLOSS. In one visit, A.S. described a black male in his late 30s with a West African accent performing dental services for his children. On another visit, A.S. described a different black male in his 40s with an American accent working on his children's teeth, fitting the description of Dentist 1. A.S. said the lobby of the dentist's office had many patients during each visit. Investigators provided A.S. with a summary of the claims billed by FLOSS for the children. A.S. told investigators that the services that were billed and the dates of service were not accurate.

50. Investigators reviewed Medicaid claims data for G.S.'s children. From August 2019 through September 2020, FLOSS billed Dentaquest approximately $22,996.82 for providing dental services, including approximately 135 cavity filling procedure codes, to G.S.'s children, A.M.S., D.J., O.S., Ab.S., G.S., Alp.S. and Ali.S. FLOSS was paid approximately $14,377.36 on these claims. All claims were billed with one provider, Dentist 1, as the rendering provider.

### *Parent R.C.*

51. On January 19, 2021, investigators interviewed Medicaid client parent R.C. R.C. has five children, Kh.P., D.P., Ky.P., C.T., and Ka.T., who are insured for dental benefits with Medicaid. R.C. could not name the dental office or the dentist but she was familiar with the addresses for FLOSS.

52. R.C. identified Patient Recruiter 2 as an individual who paid her to take her children to the dentist. R.C. told investigators that she has been to the Jensen Location. R.C. advised on their last visit, her children went to the back and had their teeth brushed. R.C. said she was unaware that any of her children received fillings and thought they only received a teeth cleaning.

53. Investigators reviewed Medicaid claims data for R.C.'s children. From September 2019 through June 2020, FLOSS billed Dentaquest approximately $16,953.19 for providing dental services, including approximately 116 cavity filling procedure codes, to R.C.'s children, K.P., D.P., K.C., C.T., and K.T., FLOSS was paid approximately $11,928.41 on these claims. All claims were billed with Dentist 1 as the rendering provider.

### *Parent S.N.*

. On April 27, 2022, investigators interviewed Medicaid client parent S.N.. S.N. has 5 children A.N., J.B., Sk.N., U.U., and K.G. S.N. said she received free pizza and a $30.00 gift card for taking her children to FLOSS. S.N. said was contacted by Patient Recruiter 1 four times over 6 months to take her children to the dentist's office.

. In November 2020, S.N. took her children to the FLOSS Hillcroft Location for dental services. S.N. said that A.N. did not receive 16 fillings. S.N. said it would be "impossible" for A.N. to receive 16 fillings during their visit. J.B. did not need any work done during their visit and should not have been billed for fillings. The only dental work J.N. has done is for dental caps. Sk.N. had her teeth cleaned. K.G. and U.U. did not receive any dental work.

. S.N. identified A GAVIOLA and AQUINO as dentists that worked on his children's mouths. S.N. said she did not want to go back to FLOSS because A GAVIOLA injured A.N.'s mouth. S.N. added she did not like that the dentist used a physical restraint to provide dental treatment for U.U.

57. Investigators reviewed Medicaid claims data for S.N.'s children, A.N., J.B., Sk.N., U.U., and K.G. From October 2020 through November 2020, FLOSS billed Dentaquest approximately $8,630.34 for providing dental services, including approximately 83 cavity filling procedure codes, to S.N.'s children, A.N., J.B., Sk.N., U.U., and K.G., FLOSS was paid approximately $7,602.21 on these claims. Each child was billed for 12 or more cavity filling procedure codes. All claims were billed with Dentist 1 as the rendering provider.

*Bank Records Analysis*

58. Between June 2019 and February 2021, MCNA and Dentaquest deposited $5,025,894.52 into the FLOSS BBVA bank account ending 6991. R GAVIOLA and Dentist 1 are signors on this account. From June 2019 until February 2021, $3,823,803.00 was transferred to two accounts in the name of R GAVIOLA: (1) BBVA bank account ending 7065 and (2) BBVA bank account ending 8338. Between December 2019 and February 2021, Dentist 1 received $79,420.00 via check from the FLOSS BBVA account ending in 6991.

(continued on next page)

H. **Conclusion**

59. Based upon the above information, probable cause exists to believe that R GAVIOLA has committed violations of federal law, including, Conspiracy to Commit Health Care Fraud, 18 U.SC. § 1349, Health Care Fraud, 18 U.S.C. § 1347, Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks, 18 U.S.C. § 371, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b.

I declare under penalty of perjury that the foregoing is true and correct.

_____
William Paul Dunn
Special Agent
U.S. Department of Health and Human Services-
Office of Inspector General

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone before me this _1st__ day of August, 2022, and I find probable cause.

_____
YVONNE Y. HO
UNITED STATES MAGISTRATE JUDGE